**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-24109

FLORIDA FAIR HOUSING ALLIANCE, INC.

    **Plaintiff,**

v.

PINELLAS-ALLEN'S CREEK ASSOCIATES,
LLC d/b/a THE COLUMNS AT ALLEN'S
CREEK, and ECI Management, LLC,

    **Defendants.**

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED**
**COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Pinellas-Allen's Creek Associates, LLC d/b/a The Columns at Allen's Creek ("Defendant" or "the Complex"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves to dismiss Plaintiff's Amended Complaint ("Complaint") and states in support:[1]

**INTRODUCTION**

On December 21, 2020, Plaintiff filed a single-count Amended Complaint for alleged violations of the Fair Housing Act, 42 U.S.C. §§ 3604(d) (the "FHA") under the theory that Defendant's applicant screening practices have a disparate impact on Black and Hispanic individuals. Compl. ¶¶ 22, 35-39. More specifically, Plaintiff alleges that its employee/agent – who was not an actual applicant and had no interest in becoming a tenant in any of Defendant's premises – posed as a prospective tenant; made a single phone call to Defendant's agent;

---

[1] Defendant notes venue is improper because the events giving rise to the actions alleged in the Complaint occurred in the Middle District of Florida. *See* Compl. ¶¶ 8, 17. Defendant reserves its right to file a motion seeking to transfer this matter to the appropriate venue.

represented that he had a felony conviction and asked whether that conviction would foreclose the possibility of living in Defendant's premises; and was told that the felony conviction would result in a denied rental application. Compl. ¶¶ 17-20. As will be set forth in greater detail below, Plaintiff's Complaint must be dismissed in its entirety. ***First***, Plaintiff fails to state a claim for unlawful disparate impact as the allegations concerning a single encounter are insufficient to create a policy and, even if they were sufficient to create a policy, the Complaint lacks the requisite factual allegations to establish that any alleged policy has a disparate impact on a protected class. ***Second,*** even if Plaintiff did allege sufficient facts to set forth a plausible claim for unlawful disparate impact, Plaintiff's Complaint must nevertheless be dismissed for a failure to plead standing under the Fair Housing Act.

## FACTUAL ALLEGATIONS

Plaintiff alleges that it is a fair housing advocacy and non-profit organization that investigates housing providers that it suspects engage in practices that violate the FHA. Compl. ¶ 6. Accordingly, Plaintiff alleges that on May 9, 2020, it directed a Hispanic male[2] with a felony conviction (the "Field Tester") to call Defendant to ask whether having a felony conviction would result in a denied rental application. Compl. ¶¶ 16-20. According to Plaintiff, Defendant's agent told the Field Tester that a felony conviction would result in a denied application. *Id*. ¶ 19. The Complaint is devoid of any other details regarding the conversation, but does make clear that the sole basis for Plaintiff's allegations is a singular phone call made by a Field Tester who had no actual interest in or intent to rent at Defendant's property. *See generally*, *id*. According to Plaintiff, this singular alleged incident – and this incident alone – constitutes a pattern and practice of

---

[2] Plaintiff does not allege that its agent/employee made Defendant aware of its agent/employee's race or national origin **during** the alleged phone call, or otherwise allege plausible facts to establish that Defendant or its agents had any reason to know the Field Tester's race.

engaging in housing practices that violate the FHA by having a disparate impact on individuals of color. *Id*. ¶¶ 21-23. Importantly, the Complaint is devoid of any allegations suggesting that Defendant actually denies rental applications from convicted felons; that the Field Tester applied and was denied; that the Field Tester was denied the ability to apply; that the Field Tester was told not to apply; or that similarly situated white applicants with felony convictions were approved to rent. *See generally*, *id*. ¶¶ 1-41.

## MEMORANDUM OF LAW

### I. Motion to Dismiss Standard.

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court holds that "[w]hile a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, "only a Complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. When considering a motion to dismiss, the Court must accept all of the

plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The Court must also dismiss a Complaint where it lacks subject matter jurisdiction over one or more plaintiffs' claims. *See* Fed. R. Civ. P. 12(b)(1); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception" and "[e]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction"). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). "Facial attacks" require the Court to "merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his Complaint are taken as true for the purpose of the motion." *Id*. (internal citations and quotations omitted). On the other hand, a "factual attack" challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id*. For this reason, "matters outside the pleadings, such as testimony and affidavits, are considered" (*Id*.) when analyzing a factual attack on jurisdiction. "It is elementary that a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981).[3]

II. **Plaintiff Fails to Plead Sufficient Plausible Facts to Establish A Prima Facie Claim of Disparate Impact (or unlawful discriminatory effects) under the Fair Housing Act.**

Section 3604(d) of the Fair Housing Act prohibits a housing provider from representing to applicants that housing "is not available … when such dwelling is in fact so available" due to "race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. 3604(d). The

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted all decisions of the former Fifth Circuit prior to October 1, 1981 as binding precedent.

FHA's prohibition includes policies that have a disparate impact on protected persons. *See Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 527 (2015)("*Inclusive Communities*").

To establish a disparate impact claim under the FHA, Plaintiff must allege that "defendant has a practice that is 'not intended to discriminate' but nonetheless has a 'disproportionately adverse effect on minorities.'" *Fla. Fair Hous. All., Inc. v. Park E.-West Ltd.*, No. 20-21976-Civ, 2020 U.S. Dist. LEXIS 159399, at *5 (S.D. Fla. Sep. 1, 2020) (Scola, J.) (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The practice must also be "unjustified by a legitimate rationale." *Id*. (citing *Inclusive Comtys.*, 576 U.S. at 541. A plaintiff who relies on statistical disparities to allege disparate impact must fail if the plaintiff cannot point to a defendant's policy causing the disparity such that there is a causal connection between the offered statistics and the defendant's practice. *Id*.

In other words, a prima facie case of disparate impact discrimination will fail unless it demonstrates *both* relevant statistical disparity (evidence comparing members of the protected class affected by the challenged policy with non-members affected by the challenged policy), *and also* a plausible showing of "robust causality" between the challenged policy and that statistical disparity. *Inclusive Comtys., 576 U.S.* at 521. Succinctly, a "plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.; see also Oviedo Town Center II, L.L.L.P. v. City of Oviedo, Florida,* 759 F. App'x 828 (11th Cir. 2018) (granting defendants' 12(b)(6) motion to dismiss Complaint discrimination under the FHA). This is because racial imbalance, without more, "does not establish a *prima facie* case of disparate impact. *Id*.

Specifically, Plaintiff alleges that during a single phone call, Defendant's agent purportedly told Plaintiff's Field Tester that Defendant would automatically deny his application due to his record felony conviction. Compl. ¶ 19. Plaintiff's 41 paragraph Complaint explicitly concludes without factual basis that Defendant's "policy" is "unlawful" under the Fair Housing Act because "it has a "disparate impact on Black and Hispanic people." *See* e.g., Compl. ¶¶ 21, 23, 27, 30, 35, 37. Plaintiff's conclusions of the existence, operation, and application of an alleged "policy" that is "unlawful" and has a "disparate impact" on a protected class are wholly unsupported by any facts.

In *Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008), an operator of halfway houses for recovering alcoholics (considered "disabled" under the Fair Housing Act) alleged that a city's zoning ordinance had a disparate impact on the protected class of people with disabilities. The operator's claim failed and was dismissed, however, because he provided no comparative data to support a prima facie case of disparate impact. The *Schwarz* plaintiff failed to provide "an adequate statistical foundation for a disparate impact claim because he presented no comparative data at all," relying instead on a "bald assumption" that the ordinance's effect on the halfway houses would have a disparate impact on recovering alcoholics. *Id*. at 1217-18.

In the instant case, Plaintiff blithely concludes without any factual support in its Complaint that:

> [1]  Defendant's practice of, without any review or investigation, turning away individuals with a felony criminal record is an arbitrary and artificial barrier to housing, the likes of which is unnecessary to achieve a valid interest or legitimate objective;
>
> [2]  a robust causal link exists between the Defendant's discussed practices and the disparate impact on Black and Hispanic people;

> [3] the practice has a direct, disproportionate discriminatory effect on Black and Hispanic individuals;
>
> [4] Defendant has violated the Fair Housing Act by, *inter alia,* making unavailable and/or otherwise denying the dwelling to individuals on the basis of race and/or criminal record;
>
> [5] there is a direct link between the disparate impact and Plaintiff's injury.

Compl. ¶¶ 35-.39. In other words, the Complaint merely states the elements of a prima facie case of disparate impact discrimination under the Fair Housing Act as set forth in *Inclusive Communities.* As fully set forth below, the Complaint fails to provide factual support for the existence of any allegedly facially neutral policy with unlawful discriminatory effects, fails to provide any factual support for any racial disparity in housing applications, and also fails to prove any "robust causality" between an alleged policy and an alleged statistical racial disparity. Accordingly, Plaintiff's Complaint must be dismissed.

   **i.   The Complaint does not state the existence of any facially neutral policy with allegedly discriminatory effects.**

In the Complaint, Plaintiff contends that Defendant has an illegal "practice of, without any review or investigation, turning away individuals with a felony criminal record." Compl. ¶ 35. Contrary to Plaintiff's contentions, the Complaint fails to show the Defendant has such a practice in place. Rather, a single encounter with a single agent of Defendant is insufficient to preliminarily establish the existence of a customarily applied policy. Indeed, Plaintiff's only factual allegation of the existence of facial neutral policy with a racially discriminatory effect is a single paragraph of the Complaint:

> On May 9, 2020, at approximately 12:39 PM, FT [field tester] called the Complex at phone number 727-536-6375. After dialing this number, FT was connected to an agent of Defendant, of whom identified herself as 'Rayetta'. FT first asked whether the rental

>property was available, to which Defendant responded, without hesitation, that property was available, *namely*, one-bedroom apartment. FT then asked whether his (FT's) rental application would be denied due to FT's record felony conviction, to which Defendant immediately retorted: 'no I'm sorry it will be declined.'

Compl. ¶ 19. Plaintiff apparently supposes that a description of a single encounter with a single agent of Defendant is sufficient to preliminarily establish the existence of a customarily applied policy. Plaintiff is incorrect. A "threshold" foundation for a claim of disparate impact is factual support for the proposition as to whether a "policy" allegedly causing the discriminatory effect even exists. *See Fortune Society*, 388 F.Supp.3d at 173 (denying summary judgment to plaintiff on disparate impact claim for alleged criminal history ban because "plaintiff cannot meet its burden without [an] initial showing that a ban exists").

Other than the allegation of a one-time decision stated during Plaintiff's verbal exchange with Defendant's agent, the Complaint is devoid of any factual allegations of the existence of a challenged "policy." While a single encounter might be factually sufficient for a case of intentional discrimination (or disparate treatment) to survive a motion to dismiss, a single encounter does not a "policy" make. *Inclusive Communities*, 135 S.Ct. at 2523 (a disparate impact plaintiff "will not easily be able to show ... a policy causing a disparate impact because [. . .] a one-time decision may not be a policy at all"). As Plaintiff's Complaint fails to meet even the prima facie element of a disparate impact case (identifying an operative policy allegedly causing a discriminatory effect), the Complaint must be dismissed.

**ii.     Disparate impact discrimination theory requires statistical evidence of racial disparity and a causal connection between that disparity and the challenged policy to make out a prima facie claim of violation of the Fair Housing Act**.

As in the failed claim of disparate impact discrimination in *Schwarz*, Plaintiff here has provided "no comparative data at all" to show that any particular class of people protected by the

Act are disproportionately impacted by the alleged "policy" of Defendant. *Schwarz*, 544 F.3d at 1217-18. Like the *Schwarz* plaintiff, Plaintiff here makes nothing but a "bald assumption" that the challenged policy "has a disparate impact on Black and Hispanic individuals." Compl. ¶ 22. Plaintiff not only neglects "to allege facts at the pleading stage or produce statistical evidence" in support of this "naked conclusion" of disparate impact, but also fails to provide any evidence of the "robust causality" between the challenged policy and the disparate impact claimed. *Oviedo Town Center II* 759 F. App'x at 835 (upholding trial court's finding of lack of prima facie case of disparate impact).

Plaintiff's attempts to meet the Supreme Court's *Inclusive Communities* prima facie standard for a claim of disparate impact test solely on its vague reference to "recent data, studies and HUD findings" that "Hispanic and Black people are arrested, convicted, and imprisoned at vastly disproportionate in country as a whole, of which is consistent with the State of Florida." Compl. ¶ 26. The Complaint appears to ascribe the alleged "recent data, studies and HUD findings" regarding disproportionate representation of "Hispanic and Black" people being "arrested, convicted, and imprisoned" to a 2016 HUD "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions." As a "guidance" document, this memorandum only expresses HUD's enforcement policies for those allegations of disparate impact discrimination it investigates or prosecutes. Plaintiff's general conclusory allegation of unlawful disparate impact from criminal history screenings are based solely on quotations of hearsay policy statements from HUD's guidance document, are not factually specific to the challenged alleged "policy" at issue in the Complaint, and are inaccurately and misleadingly excerpted by Plaintiff.

Perhaps more significant, HUD's policy position on disparate impact has changed since the referenced 2016 guidance document. Specifically, on October 26, 2020, the Department of Housing and Urban Development's final rule on the implementation of the Fair Housing Act's disparate impact standard became effective (the "Final Rule"). *HUD's Implementation of the Fair Housing Act's Disparate Impact Standard*, 85, 60288 (Sept. 24, 2020).  HUD's Final Rule revised its 2013 Fair Housing Act disparate impact standards to reflect the U.S. Supreme Court's 2015 decision in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc*. *Id.* at 60289. The Final Rule aligns with *Inclusive Communities*, which stated that liability in disparate impact cases cannot be "imposed based solely on a showing of a statistical disparity." *Id.* at 60298. The Final Rule clarifies that a plaintiff must show that the policy or practice has a ''disproportionately adverse effect'' on members of a protected class in order to bring a disparate impact claim. *Id.* at 60313. Without that showing, a plaintiff has not alleged the prima facie element of a "robust causal link" between the policy and the claimed disparate impact required by the *Inclusive Communities* decision. *Id.* at 60289. Specifically, HUD's Final Rule added the word ''disproportionately''' to "clarify that it is not enough to simply state that some number of members of a protected class are affected, but that a plaintiff must show that the policy or practice disproportionately affects members of protected class compared to similarly situated non-members." *Id.* at 60313. Therefore, even with the presumption of factual truth, the Complaint cannot be saved from its fatal defect of failure to state a claim upon which relief can be granted as a matter of law.

As Plaintiff has failed to meet its burden of establishment of even a prima facie case of disparate impact discrimination under the Fair Housing Act, Defendant's motion must be granted and Plaintiff's Complaint dismissed in full.

**III.     Plaintiff's Complaint Must be Dismissed For a Failure to Plead Standing.**

Even if Plaintiff did allege sufficient facts to set forth a plausible claim for unlawful disparate impact, Plaintiff's Complaint must nevertheless be dismissed for a failure to plead standing under the Fair Housing Act. A threshold question in every federal case is whether the plaintiff has made out a "case or controversy between himself and the defendant within the meaning of Article III of the U.S. Constitution. *See Warth v. Seldon*, 422 U.S. 490, 498, 95 S.Ct. 2197; 45 L. Ed. 2d 343 (1975). As this Court and others have observed, "the doctrine of standing is a 'core component' of this fundamental limitation that 'determine[es] the power of the court to entertain the suit." *MSP Recovery, LLC v. Allstate Ins. Co.*, 276 F. Supp.2d 1311, 1313 (S.D. Fla. 2017)(Scola, J.) (quoting *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264-65 (11th Cir. 2011). Without standing, "a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *Id*. (quoting *Hollywood Mobile Estates*, 641 F.3d at 1265). Standing, therefore, "is not a mere pleading requirement but rather an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Private citizens and indeed organizations like Plaintiff may prosecute claims under the Fair Housing Act, provided they have appropriate standing to do so. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). To adequately allege standing, a plaintiff must show: (1) they have suffered an "injury in fact" that is concrete and particularized and actual or imminent, i.e. not conjectural or hypothetical; (2) that there is a causal connection between the injury complained of that is fairly traceable to the defendant and not some third party not before a court; and (3) that it is likely and not merely speculative that the injury will be redressed by a favorable opinion. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). For organizational plaintiffs like Plaintiff,

an organization can adequately allege standing if it is able show "a concrete and demonstrable injury to the organization's activities" that is "more than simply a setback to the organization's abstract interests." *Havens* 455 U.S. at 379.

The Eleventh Circuit, expanding on *Havens*, has further explained that an "organization has standing to sue on its own behalf if the defendant's ***illegal*** acts impair its ability to engage in its projects by forcing the organization to devote resources to counteract those illegal acts." *Common Cause/Georgia v. Billups*, 554 F.3d 1350 (11th Cir. 2009). To qualify as a cognizable Article III injury, the organization's diverted resources must be independent of the cost of detecting and challenging allegedly unlawful conduct. *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.2d 1153, 1166 (11th Cir. 2008) ("plaintiffs cannot bootstrap the cost of detecting and challenging illegal practices into injury for standing purposes").

    **i.**     **Plaintiff's Complaint does not allege an organizational injury.**

Even accepting all of Plaintiff's allegations as true, and taking all plausible inferences in Plaintiff's favor, the Complaint fails to satisfy basic pleading requirements. Plaintiff claims to have adequately plead organizational standing on the basis that the Defendant's alleged "practice of, without any review or investigation, turning away individuals with a felony criminal record" required Plaintiff to "devote resources to counteract the . . . complained actions of Defendant" and "divert resources from . . . its counseling, outreach, and educational efforts" causing injury to the organization. Compl. ¶ 35, 28.

Based on these allegations, Plaintiff has suffered an injury in its own right. However, the inquiry as to injury in fact does not end there as Plaintiff's resources must have been diverted to counteract the allegedly ***illegal*** actions of the Defendant. *See Browning*, 522 F.3d at 1165. For the reasons stated in Section II(i) above, Plaintiff has not stated a plausible claim of unlawful

discrimination because Plaintiff has not established the existence of an *illegal* policy customarily applied by Defendant. Absent a plausible claim of *illegal* acts, Plaintiff has not adequality alleged an organization injury via a "diversion of resources."

### ii. The Field Tester, and by extension, Plaintiff, does not have standing as a "tester."

Alternatively, even without a showing of injury to the organization itself, an organization may still have standing to bring suit as a representative of its members - but only when its members would otherwise have standing to sue in their own right. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 512 (1975); *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999). Plaintiff has no standing here because the Field Tester did not make a bona fide offer to rent, and was not the victim of a discriminatory misrepresentation. As such, he did not suffer a cognizable injury under the FHA, and therefore lacks individual standing to sue in his own right.

The FHA separately prohibits discriminatory refusals to rent, 42 U.S.C. § 3604(a), as well as the discriminatory provision of false information about housing availability, 42 U.S.C. § 3604(d). *Havens*, 455 U.S. at 363. As the Supreme Court explained in *Havens*, Congress required a "bona fide offer" to rent or purchase for discriminatory refusals to rent under Section 3604(a), but did not impose a similar requirement for discriminatory misrepresentations under Section 3604(d). *Havens*, 455 U.S. at 363. Although testers, by definition, do not have a "bona fide" intent to rent – therefore precluding standing under Section 3604(a) - the *Havens* Court concluded that

> [a] tester who has been the object of a **misrepresentation** made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the [FHA's] provisions.

*Id*. at 364 (emphasis added).

Applying these principles, *Havens* found that the black tester – who received false information that housing was unavailable – had standing based on the injury to her statutory right

to truthful housing information under Section 3604(d). *Id.* at 374. On the other hand, the white tester, who was correctly told that housing was available, did not have standing because he did not allege "that he was the victim of a discriminatory misrepresentation," and therefore had not pleaded a cause of action under Section 3604(d). *Id.* at 374-75.

In this case, Plaintiff's Field Tester and the white tester in *Havens* are equivalents. The Complaint describes using "the Field Tester" to "test" Defendant's rental complex Compl. at ¶ 17. It does not allege that he made a bona fide offer to rent. *See generally,* Compl. ¶¶ 1-41. Because the Field Tester was acting as a "tester," without an actual intent to rent, he does not have standing under Section 3604(a), which governs discriminatory refusals to rent and requires a "bona fide offer." *Havens*, 455 U.S. at 373; 42 U.S.C. § 3604(a).

Similarly, the Complaint's failure to allege a discriminatory misrepresentation deprives the Field Tester, and by extension Plaintiff, of the informational injury recognized in *Havens* under Section 3604(d). The Field Tester, like the white tester in *Havens*, fails to state a cause of action under Section 3604(d) because the Complaint does not (and cannot) allege that the Field Tester was "the victim of a discriminatory misrepresentation." *Havens*, 455 U.S. at 374-75. To the contrary, and views in the light most favorable to Plaintiff, and unlike in *Havens*, Plaintiff is alleging that the Field Tester was truthfully told that his felony conviction would disqualify him from available housing – not that he was falsely told that available housing was unavailable. Without an allegation of discriminatory misrepresentation, the Field Tester has failed to establish "tester" standing and Plaintiff has no right to bring an action on his behalf. Accordingly, Plaintiff lacks the adequate constitutional standing to bring forth this claim.

## CONCLUSION

Plaintiff's Amended Complaint fails to state a claim for unlawful disparate impact as the allegations concerning a single encounter are insufficient to create a policy and, even if they were sufficient to create a policy, the Complaint lacks the requisite factual allegations to establish that any alleged policy has a disparate impact on a protected class. Moreover, even if Plaintiff did allege sufficient facts to set forth a plausible claim for unlawful disparate impact, Plaintiff's Complaint must nevertheless be dismissed for a failure to plead standing under the Fair Housing Act.

WHEREFORE, Defendant respectfully requests that the Court enter an Order: (1) dismissing Plaintiff's Amended Complaint in its entirety; (2) awarding Defendant its reasonable fees and costs associated with bringing this motion; and (3) awarding such further relief as the Court deems just and proper.

Dated: January 4, 2021

Respectfully submitted,

**Lewis Brisbois Bisgaard & Smith LLP**
110 SE 6th Street, Suite 2600
Ft. Lauderdale, Florida 33301
Telephone: 954-728-1280
Facsimile: 954-728-1282

*/s/ Andrea S. de Ona*
Jonathan A. Beckerman, Esq. (FBN 568252)
Jonathan.Beckerman@lewisbrisbois.com
Miguel A. Morel, Esq. (FBN 89163)
Miguel.Morel@Lewisbrisbois.com
Christopher T. Perré, Esq. (FBN 123902)
Christopher.Perre@lewisbrisbois.com
Andrea S. de Ona, Esq. (FBN 1019568)
Andrea.deona@lewisbrisbois.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 4, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notice of Electronic Filing generated by CM/ECF and Electronic Mail.

> */s/ Andrea S. de Ona*
> Andrea S. de Ona, Esq.